# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COSMO TECHNOLOGIES LIMITED, VALEANT PHARMACEUTICALS INTERNATIONAL, and VALEANT PHARMACEUTICALS LUXEMBOURG S.A.R.L., | : : : : : : : | UNSEALED ON MARCH 28, 2019 |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 15-164-LPS |
| ACTAVIS LABORATORIES FL, INC., | : : : | |
| Defendant. | : | |
| COSMO TECHNOLOGIES LIMITED, VALEANT PHARMACEUTICALS INTERNATIONAL, and VALEANT PHARMACEUTICALS LUXEMBOURG S.A.R.L., | : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 15-193-LPS |
| ALVOGEN PINE BROOK, LLC, | : : : | |
| Defendant. | : | |

## MEMORANDUM ORDER

At Wilmington this **27th** day of **March, 2019**:

Pending before the Court is Defendant Actavis Laboratories Fl, Inc.'s ("Actavis") Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285 (C.A. No. 15-164 D.I. 266) and Defendant Alvogen Pine Brook, LLC's ("Alvogen") Motion Under 35 U.S.C. § 285 for a Declaration that this Case Is Exceptional and for an Award of Its Attorneys' Fees (C.A. No. 15-193 D.I. 249). Having reviewed the parties' briefs and accompanying declarations and exhibits (C.A. No. 15-

164 D.I. 267, 274, 276; C.A. No. 15-193 D.I. 250, 251, 259, 261), **IT IS HEREBY ORDERED** that both motions are **GRANTED IN PART** for the reasons stated below.[1]

1.  In February 2015, Plaintiffs Cosmo Technologies Limited, Valeant Pharmaceuticals International, and Valeant Pharmaceuticals Luxembourg S.A.R.L. (collectively, "Plaintiffs") sued Actavis for infringement of six patents and sued Alvogen for infringement of three patents. (D.I. 1; *see also* C.A. No. 15-193 D.I. 1) In November 2015, Plaintiffs filed a First Amended Complaint dropping two patents from suit against Actavis. (D.I. 48) In May 2016, Plaintiffs filed a Second Amended Complaint adding one patent against Actavis and Alvogen (collectively, "Defendants"). (D.I. 118; *see also* C.A. No. 15-193 D.I. 116) Plaintiffs maintained infringement allegations against Actavis regarding over 50 claims in five patents – U.S. Patent Nos. 7,410,651 (the "'651 patent"), 8,293,273 (the "'273 patent"), 8,784,888 (the "'888 patent"), RE 43,799 (the "'799 patent"), and 9,320,716 (the "'716 patent") – until two weeks before trial. (D.I. 214 at 6; D.I. 215 Ex. 17; D.I. 267 at 2-3) Similarly, Plaintiffs maintained infringement allegations against Alvogen regarding over 35 claims in four patents – the '651, '888, '799, and '716 patents – in the same period. (D.I. 214 at 10; D.I. 215 Ex. 17; C.A. No. 15-193 D.I. 250 at 2)

2.  In the parties' pretrial order dated April 27, 2017, Defendants expressed concern about Plaintiffs' unwillingness "to meaningfully reduce the number of asserted claims on which they will proceed to trial." (D.I. 215 Ex. 17) Defendants stated that "Plaintiffs' failure to cooperate" was "imposing unnecessary trial preparation costs and unfairly prejudic[ing] Defendants, who remain in the dark about the true scope of the trial set to begin in several

---

[1]Further citations to the record will be to the 15-164 docket unless otherwise noted.

2

weeks," prejudice that "will be exacerbated if Plaintiffs attempt a last minute reduction of claims on the eve of trial." (D.I. 215 Ex. 17; *see also* D.I. 224 at 10, 14) At the May 5 pretrial conference, the Court ordered Plaintiffs to identify by May 8 a maximum of two claims per patent against each defendant, which "will be claims that the defendants have a right to assume are the ones that the plaintiffs in good faith really do intend to go to trial on." (D.I. 224 at 16-17) The Court further advised the parties: "I encourage you to narrow [the case] further after next Wednesday [May 10] in a reasonable way which would probably involve keeping each other in the loop and making sure no one is crying foul, that oh, you dropped this at the last minute." (*Id.* at 17) Pursuant to the Court's order, on May 8, Plaintiffs dropped the '716 patent and asserted one claim of each of the patents remaining against each defendant (i.e., four claims asserted against Actavis and three claims asserted against Alvogen). (*See* D.I. 221 at 1) Yet nine days later, on May 17 at 7:45 p.m., just two business days before trial and without any warning to Defendants (or the Court), Plaintiffs also dropped the '799 and '651 patents. (*See* D.I. 223 at 1) In light of Plaintiffs' "last-minute without-warning decision to drop two patents," the Court reduced the parties' trial presentation time in a manner requested by Defendants. (*See* D.I. 225)

3. The bench trial commenced on May 22. Plaintiffs pursued infringement of the '888 patent against both defendants and the '273 patent against Actavis only. Following the close of Plaintiffs' case-in-chief, Defendants moved for judgment as a matter of law ("JMOL") under Federal Rule of Civil Procedure 52(c) on non-infringement, which the Court granted. (D.I. 243 ("Tr.") at 332) The Court later issued an opinion explaining further the basis for its bench ruling during trial. (D.I. 249) On January 14, 2019, the Court of Appeals for the Federal Circuit summarily affirmed this Court's entry of judgment for Defendants and against Plaintiffs. (D.I.

3

281)

4.  In "exceptional" patent cases, a Court may award "reasonable attorney fees" to the "prevailing party." 35 U.S.C. § 285. A case is "exceptional" under § 285 if it is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Ultimately, the Court must make a discretionary decision based on the totality of circumstances, which may include factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 & n.6. A party moving for attorneys' fees must demonstrate, by a preponderance of the evidence, that a case is "exceptional." *Id.* at 1758.

5.  There is no dispute that Actavis and Alvogen are prevailing parties. Therefore, the issue presented here is whether this case is exceptional.

6.  Neither Defendant contends that this case should be deemed exceptional from its inception. Instead, they seek an order that Plaintiffs pay Defendants' fees incurred from June and July 2016, when Defendants produced to Plaintiffs samples of Defendants' proposed generic drug products. (*See* D.I. 267 at 1 n.1; C.A. No. 15-193 D.I. 250 at 14) The Federal Circuit has affirmed decisions of District Courts to deem cases exceptional from a particular date and to award attorneys fees from (and only from) such date. *See, e.g., Cartner v. Alamo Grp., Inc.*, 561 Fed. App'x 958, 969-70 (Fed. Cir. 2014). Weighing the totality of facts and circumstances, the Court finds that this case is exceptional within the meaning of Section 285 and that an award of

Defendants' reasonable attorneys' fees incurred since the pretrial conference is appropriate for purposes of compensation and deterrence.

7. There is no question that this case stands out from others. Trial began on May 22, 2017 – and ended upon conclusion of Plaintiffs' case-in-chief, as Defendants prevailed on their Rule 52(c) motion. This is a truly rare occurrence (and nearly-unprecedented for the undersigned Judge).[2]

7. The strength of Plaintiffs' litigating positions also favors finding the case exceptional. With respect to the '888 patent, which was asserted against both Defendants, Plaintiffs were required to prove at trial that the accused products had "macroscopically homogenous composition," which the Court had construed as "a composition of uniform structure throughout, as observed by the naked eye." (D.I. 267 at 15) As noted in the Court's order on the JMOL, the Court adopted Plaintiffs' proposed construction – one which requires observation by a particular test (i.e., with the naked eye). (Tr. at 334) Nevertheless, Plaintiffs presented no evidence of anyone examining Defendants' sample tablets with her naked eye. (*Id.* at 334, 337) In fact, Plaintiffs never even bothered to provide samples of the products (which they had) to Dr. Davis, their primary infringement expert, at any time throughout the course of the litigation.[3] (*Id.* at 335) Nor have Plaintiffs ever provided any explanation for why they did

---

[2]Plaintiffs cite cases in which a Rule 52(c) motion was granted and fees motions were not subsequently filed. (*See* 164 D.I. 274 at 14-15) These cases are of limited value here, as the courts in those cases did not have to determine whether a case was "exceptional."

[3]Because this patent case is brought pursuant to the Hatch-Waxman Act, *see, e.g.*, 35 U.S.C. § 271(e)(2), where the subject of the infringement inquiry is the generic pharmaceutical product Defendants describe in their Abbreviated New Drug Application ("ANDA") and for which they seek approval from the U.S. Food and Drug Administration ("FDA"), the failure to share samples of Defendants' proposed product with the infringement expert is not necessarily an

5

not give Dr. Davis the samples and insist that he give an opinion on "macroscopically homogenous composition" by applying the test their own proposed claim construction required: observation by the naked eye. (*See* D.I. 249 at 15 (Court stating that Plaintiffs' reasons for not conducting "naked eye" test "are entirely unexplained on the record"); Tr. at 293))[4] The Court can only conclude that Plaintiffs' failure to attempt the test required by their own claim construction – especially a test that requires nothing more than giving their expert samples and asking him to look at them – is objectively unreasonable and confirms the substantive weakness of Plaintiffs' claims of infringement of the '888 and '716[5] patents.

8.  With respect to the '273 patent, which was asserted against Actavis only, Plaintiffs were required to prove that the accused product contained stearic acid. (*Id.* at 338) For unexplained reasons, Plaintiffs failed to have their expert test the samples of the accused product for the presence of stearic acid, testing which was indisputably feasible; instead, Plaintiffs' experts did a variety of other tests on them. (*Id.* at 297-98, 339-40) Plaintiffs' failure to perform the necessary test, combined with the fact that Actavis repeatedly told Plaintiffs (from even

---

egregious oversight, as it would almost certainly be in a non-ANDA patent case. Here, however, where the Court's construction (proposed by Plaintiffs themselves) makes infringement turn (at least in part) on observations by the naked eye, and Plaintiffs had in their possession samples of Defendants' proposed product, the failure to share samples with the infringement expert is a striking fact about how Plaintiffs chose to litigate this case.

[4]Of course, there has also never been a suggestion that such a test would be impractical; the Court was able to conduct the "naked eye" test at trial. (*See* Tr. at 307, 311-12, 335-37)

[5]Although the '716 patent was not asserted at trial, Plaintiffs asserted infringement of it until just two weeks before trial. It seems almost certain that Plaintiffs' claims of infringement of the '716 patent would have suffered the same fate as their claims under the '888 patent, as the former contain the same "macroscopically homogenous" limitation as the latter. (*See* D.I. 267 at 16)

before the lawsuit was filed) that its product did not contain stearic acid, was objectively unreasonable[6] and confirms the substantive weakness in Plaintiffs' infringement position.[7]

9. The manner in which Plaintiffs litigated this case after the pretrial conference further supports the Court's finding that this is an exceptional case. Despite Defendants' pleas in the April 27 proposed pretrial order to narrow the asserted claims in order to reduce prejudice to Defendants in the form of unnecessary trial preparation and cost (D.I. 215 Ex. 117), Plaintiffs maintained their assertion of at least 35 patent claims against each Defendant until two weeks before trial. Then, when ordered to reduce their asserted claims, and warned against reducing their claims further thereafter without providing advance notice to Defendants, Plaintiffs undertook a "last-minute without-warning decision to drop two patents:" just two business days before trial, they reduced their case to only two claims (one each in the '888 and '273 patents) for trial against Actavis and one claim (claim 6 of the '888 patent) for trial against Alvogen. (*See* D.I. 225) While parties should certainly "abandon positions or claims when it appears they are unlikely to prove fruitful," *St. Clair Intellectual Prop. Consultants, Inc. v. Toshiba Corp.*, 2015 WL 7451158, at *3 (D. Del. Nov. 23, 2015), the timing and circumstances in which Plaintiffs did so was unreasonable, prejudicial to Defendants,[8] and reflective of the substantive weakness of

---

[6]Plaintiffs' reliance on a 1991 article that tested a different grade of magnesium stearate was unconvincing. (*See* Tr. at 338-39)

[7]Plaintiffs emphasize that Defendants did not file a motion for summary judgment of non-infringement. (*See, e.g.*, D.I. 274 at 1, 5, 15-16, 19; C.A. No.15-193 D.I. 259 at 1, 5, 13-14, 16) The Court does not find this failing to be of much significance given the Scheduling Order's discouragement of such motions, since this case was scheduled for a bench trial. (*See* D.I. 19 at 12)

[8]For example: "This last minute change caused Alvogen to expend considerable resources re-adjusting its opening statement, and witness presentations, as well as releasing witnesses who

Plaintiffs' case.[9]

10. The interests of deterrence also support the Court's conclusion. The Court is ***not*** finding that this case should not have been brought, nor that Plaintiffs should have refrained from litigating it vigorously. However, the decisions Plaintiffs made about how to litigate this case (including what tests to conduct and not conduct, and when and what claims to drop and not drop) resulted in a situation where, by the time of final trial preparation, this case came to "stand out from the rest," in a manner making it exceptional under § 285. After the May 5, 2017 pretrial conference, the totality of circumstances warrants requiring Plaintiffs to pay the reasonable attorneys' fees incurred by Defendants thereafter. Accordingly, the Court will award Defendants their reasonable attorneys' fees from on and after May 6, 2017.[10]

Accordingly, **IT IS HEREBY ORDERED** that:

---

were scheduled to provide testimony only regarding the dropped patents . . . ." (C.A. No. 15-193 D.I. 250 at 7)

[9]Plaintiffs substantially narrowed their case nine days ***after*** their deadline to do so and despite the Court's warning against dropping patents "at the last minute." (D.I. 223; D.I. 224 at 16-17) The Court is not persuaded that Plaintiffs dropped the '799 and '651 patents as a result of the Federal Circuit's May 9, 2017 Rule 36 affirmance in a case involving a different patent covering a different product. (*See* D.I. 267 at 18; D.I. 274 at 18) Plaintiffs have not persuasively explained why it took them eight days after the Federal Circuit's decision to decide to drop patents in this case, particularly as they had previously distinguished those patents as not having much relevance to the patents-in-suit here. Nor did Plaintiffs provide Defendants or the Court any notice (even in a May 11 status report filed after the Federal Circuit's order) that they were considering further narrowing the case based on the appellate order. (*See* D.I. 276 at 9) ("Not only did *Shire v. Cadila* relate to a different patent, a different multi-matrix product, and a different active ingredient, but the ANDA product at issue also differed in structure from the Actavis ANDA Product . . . .") (internal citation omitted)

[10]The Court's ruling only applies to fees incurred by Defendants in this trial court litigation, including those incurred in connection with litigating Defendants' § 285 motion. It does not include fees incurred in connection with the appellate litigation.

1. Plaintiffs **SHALL** pay the reasonable attorneys' fees incurred by Defendants in this case from on and after May 6, 2017.

2. The parties **SHALL** meet and confer and, no later than **April 3, 2019**, file a joint status report regarding how the case should proceed, including a proposed schedule for Defendants' submissions of their requested attorneys' fees and supporting evidence.

3. The parties **SHALL** meet and confer and, no later than **March 28, 2019**, submit a proposed redacted version of this Order, should any party request any redactions. Thereafter, the Court will issue a public version of its Order.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE